**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-mc-00074-NYW

IN RE EX PARTE APPLICATION OF
WILLIAM LAGGNER FOR DISCOVERY PURSUANT
TO 28 U.S.C. § 1782 IN AID OF FOREIGN
PROCEEDINGS

---

**RESPONDENT RICARDO SALINAS' MOTION TO QUASH SUBPOENAS ISSUED
PURSUANT TO 28 U.S.C. § 1782 AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT**

---

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.......................................................3

      A.     The Cayman Island Proceedings...............................................................................3

      B.     Ricardo Salinas' Contacts with Colorado .................................................................4

      C.     The Instant Application..............................................................................................4

      D.     The Purported Service of Applicant's Subpoenas ....................................................5

ARGUMENT...................................................................................................................................5

I.     Mr. Salinas Does Not Reside (and Cannot be Found) in Colorado as Required By Section 1782...............................................................................................................................6

II.     The Cases Cited In Mr. Laggner's Application Do Not Establish That Mr. Salinas Can Be "Found In" Colorado ...............................................................................................10

III.     Even If the Court Were to Find That Mr. Salinas Could Be "Found in" Colorado, Other Considerations Weigh Strongly Against Ordering the Discovery Sought in this Case ...................................................................................................................................12

      A.     Mr. Laggner's Application Does Not Establish That The Discovery Sought Is Outside The Cayman Islands' Jurisdictional Reach ..............................13

      B.     The Undisputed Fact That All of the Requested Evidence is Located Outside of the District (And Outside of the United States) Weighs Heavily Against the Application ...........................................................................14

      C.     Mr. Laggner's Application Circumvents Proof-Gathering Restrictions In Mexico ...............................................................................................................15

      D.     The Discovery Sought Is Unduly Intrusive And Burdensome ..............................16

IV.     The Subpoenas Were Not Properly Served .......................................................................17

      A.     Service of the Subpoenas Was Not Proper Under Rule 45(b) and Section 1783..........................................................................................................................17

      B.     Service of the Subpoenas Was Not Proper Under Rule 45(c) ...............................19

      C.     Service of the Subpoenas Was Not Proper Under Rule 45(d)...............................20

CONCLUSION ................................................................................................................20

ii

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*United States* v. *Aguilar*,
  2014 WL 6680525 (W.D. Tex. Nov. 25, 2014) ........................................................................17

*U.S.* v. *Alexander*,
  817 F.3d 1205 (10th Cir. 2016) ............................................................................................6

*In re Ex Parte Application Under 28 U.S.C. § 1782 to Take Discovery from*
  *Americo Fialdini Junior*, 2021 WL 253455 (D. Colo. Jan. 26, 2021) ........................6, 8, 10, 16

*In re Anglin*,
  2009 WL 4739481 (D. Neb. Dec. 4, 2009) ...............................................................................19

*In re Application of Grupo Qumma, S.A.*,
  2005 WL 937486 (S.D.N.Y. Apr. 22, 2005) ..............................................................................6

*In re Application of Michael Wilson & Partners, Ltd.*,
  2007 WL 2221438 (D. Colo. July 27, 2007) ............................................................................8

*In re Ex Parte Application of Qualcomm Inc.*,
  162 F. Supp. 3d 1029 (N.D. Cal. 2016) ..................................................................................14

*In re Application of Thai-Lao Lignite (Thailand) Co., Ltd.*,
  821 F. Supp. 2d 289 (D.D.C. 2011) .......................................................................................14

*In re Application of Thomas Read Mattson*,
  2021 WL 1698929 (D. Colo. Apr. 29, 2021) ...........................................................................12

*Aristocrat Leisure Ltd.* v. *Deutsche Bank Trust Co. Ams.*,
  262 F.R.D. 293 (S.D.N.Y. 2009) ...........................................................................................17

*Arnold* v. *Royal Bank of Canada Tr. Co. (Cayman) Ltd.*,
  2014 WL 1871728 (S.D. Cal. May 8, 2014) ............................................................................16

*Australia & New Zealand Banking Grp. Ltd.* v. *APR Energy Holding Ltd.*,
  2017 WL 3841874 (S.D.N.Y. Sept. 1, 2017) .............................................................................7

*Briggs* v. *Castillo*,
  2022 WL 473533 (W.D. La. Jan. 20, 2022) ............................................................................18

*In re Broadsheet LLC*,
  2011 WL 4949864 (D. Colo. Oct. 18, 2011) ...............................................................................8

*Calder* v. *Jones*,
  465 U.S. 783 (1984)....................................................................................................................9

*Campos-Alvarez* v. *Newmont Mining Corp.*,
  2016 WL 9725290 (D. Colo. Sept. 27, 2016)............................................................................7

*Chevron Corp.* v. *Snaider*,
  78 F. Supp. 3d 1327 (D. Col. 2015)...............................................................................7, 13, 16

*In re Chevron Corporation*,
  2010 WL 8786279 (D.N.M. Sept. 2, 2010) ..............................................................................14

*Dahya* v. *Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*,
  17 Nev. 208 (2001) ...................................................................................................................19

*In re Degitechnic*,
  2007 WL 1367697 (W.D. Wash. May 8, 2007)........................................................................16

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2019).....................................................................................................10

*In re Deposito Centralizado de Compensacion y Liquidacion de Valores
  Decevale, S.A.*,
  2021 WL 2323226 (S.D. Fla. June 1, 2021) ............................................................................10

*In re Eli Lilly and Company*,
  37 F.4th 160 (4th Cir. 2022) ....................................................................................................12

*Fialdini*, 2021 WL 411105 (D. Colo. Feb. 5, 2021) ...................................................................7, 10

*In re Grupo Unidos Por El Canal, S.A.*,
  2015 WL 1810135 (D. Col. April 17, 2015).........................................................................7, 15

*In the Matter of Kozuch* v. *Kozuch*,
  2018 WL 4376405 (D. Colo. June 7, 2018)...............................................................................7

*Intel Corp.* v. *Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)............................................................................................................12, 13

*Interbrew Cent. Eur. Holding BV* v. *Molson Coors Brewing Co.*,
  2013 WL 5567504 (D. Colo. Oct. 9, 2013) ...............................................................................7

*In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*,
  2015 WL 3439103 (D. Nev. May 28, 2015).............................................................................13

*In re Kegel*,
   2013 WL 4462110 (D. Colo. Aug. 20, 2013) ...............................................................................8

*In re Ex Parte LG Elecs. Deutschland GmbH*,
   2012 WL 1836283 (S.D. Cal. May 21, 2012)...............................................................13, 14, 16

*In re Matter of Application of Oxus Gold PLC*,
   2006 WL 2927615 (D.N.J. Oct. 11, 2006)................................................................................11

*Melea, Ltd*. v. *Jawer SA*,
   511 F.3d 1060 (10th Cir. 2007) .........................................................................................1, 8, 9

*Memorandum of Law in Support of Ex Parte Application, Perez Pallares*,
   2010 WL 9525831 ....................................................................................................................8

*Municipality of Mariana*, 2024 WL 246235 (D.N.M. Jan. 23, 2024) .............................................7

*OL Private Counsel, LLC* v. *Olson*,
   2022 WL 2304279 (D. Utah June 27, 2022)............................................................................17

*Ospina* v. *Ospina*,
   2022 WL 16951671 (W.D.N.C. Nov. 15, 2022)......................................................................18

*In re Oxus Gold PLC*,
   2007 WL 1037387 ..................................................................................................................18

*In re Perez Pallares*,
   2010 WL 4193072 (D. Colo. Oct. 20, 2010) ..........................................................................15

*Pinchuk* v. *Chemstar Prod. LLC*,
   2014 WL 2990416 (D. Del. June 26, 2014)............................................................................14

*In re Pinchuk*,
   2014 WL 1328484 (S.D. Fla. Mar. 31, 2014)..........................................................................13

*Raeth* v. *Bank One*,
   2008 WL 410596 (D. Colo. Feb. 13, 2008)............................................................................17

*Republic of Ecuador v. Bjorkman*,
   801 F. Supp. 2d 1121 (D. Colo. 2011).....................................................................................8

*Republic of Ecuador* v. *Stratus Consulting, Inc.*,
   2013 WL 2352425 (D. Colo. May 29, 2013)............................................................................8

*In re Request for Int'l Jud. Assistance from the Norrkoping Dist. Ct., Sweden*,
   219 F. Supp. 3d 1061 (D. Colo. 2015).....................................................................................7

*Salt Mobile S.A.* v. *Liberty Glob. Inc.*,
2021 WL 2375864 (D. Colo. June 10, 2021)...............................................................7, 12, 16

*In re Servotronics, Inc.*,
2021 WL 1521931 (D.S.C. Apr. 16, 2021)........................................................................7, 10

*Staudinger* v. *Hoelscher, Inc.*,
166 F. Supp. 2d 1335 (D. Kan. 2001) ...................................................................................17

*Terra Inv., LLC*, 2023 WL 21014 (S.D. Fla. Jan. 3, 2023)............................................................1, 9

*Torreblanca de Aguilar* v. *Boeing Co.*,
806 F. Supp. 139 (E.D. Tex. 1992) .......................................................................................15

*Westjest Airlines, Ltd.* v. *Lipsman*,
2015 WL 7253043 (D. Colo. Nov. 17, 2015) ..........................................................................7

**Statutes**

34 U.S.C.A. § 20911(13) ...............................................................................................................6

28 U.S.C. § 1782........................................................................................................... *passim*

28 U.S.C. § 1783...........................................................................................................................17

**Other Authorities**

American Heritage Dictionary.........................................................................................................6

4A Charles Alan Wright, et al., Fed. Prac. & Proc. Civ. § 1083 (4th ed.)....................................17

Fed. R. Civ. P. 4............................................................................................................................18

Fed. R. Civ. P. 45.....................................................................................................................17, 19

Oxford English Dictionary..............................................................................................................6

Robert M. Kossick, Jr., *Litigation in the United States and Mexico: A Comparative Overview*, 31 U. MIAMI INTER-AM. L. REV. 23, 66 (2000) ...............................15

Ryan G. Anderson, *Transnational Litigation Involving Mexican Parties*, 25 ST. MARY'S L.J. 1059, 1060 (1994) ....................................................................................15

Spain - Central Authority & Practical Information, HCCH,
https://tinyurl.com/bd3drdy9 (last visited May 6, 2024) .......................................................18

Spain, European Justice, https://tinyurl.com/3fzy34ra (last visited May 6, 2024)......................18

Respondent Ricardo Salinas ("Mr. Salinas" or "Respondent"), by and through the undersigned counsel, respectfully files this motion to quash subpoenas issued under 28 U.S.C. § 1782 which seek discovery in aid of a foreign proceeding.

## INTRODUCTION

Mr. Salinas, whose contacts with Colorado are limited to short and sporadic ski vacations—*including only a single short trip in the last five years*—respectfully moves to quash two subpoenas seeking discovery in aid of a Cayman Islands-based proceeding (the "Cayman Islands Proceedings") that have nothing whatsoever to do with Colorado and to which Mr. Salinas is not a party.

As set out in more detail below, William Laggner, a claimant in the Cayman Island Proceedings, attempted to serve Mr. Salinas with two subpoenas (one for testimony and one for documents) issued by this Court upon an *ex parte* application under 28 U.S.C. § 1782. The subpoenas should be quashed for multiple, independent reasons.

First, and most importantly, Mr. Salinas does not reside and cannot be found in this District for purposes of Section 1782, and is therefore beyond the reach of the statute and the Court's jurisdiction. Due process requires that in order to be subject to the Court's jurisdiction in this district Mr. Salinas have "minimum contacts" with Colorado such that he could reasonably anticipate being haled into court here, and that the Court's exercise of jurisdiction be "'reasonable' under the circumstances." *Melea, Ltd*. v. *Jawer SA*, 511 F.3d 1060, 1065-66 (10th Cir. 2007). That test is informed by "whether the discovery material sought proximately resulted from [his] forum contacts." *Terra Inv.*, LLC, 2023 WL 21014, at \*5 (S.D. Fla. Jan. 3, 2023) (citations omitted). Here, Mr. Salinas' contacts with Colorado—consisting of short and sporadic vacations having nothing whatsoever to do with the Cayman Islands Proceedings for which

discovery is sought—are so limited that the exercise of jurisdiction over him would violate due process.

Mr. Laggner makes three points in alleging that Mr. Salinas can be "found in" this District for purposes of Section 1782:  (1) that Mr. Salinas' "family" owns a time share in Vail, Colorado; (2) that, to this day, Mr. Salinas "regularly" visits Vail; and (3) that Mr. Salinas has had a "pattern and practice" of visiting Vail as a ski destination since 1998.  Doc. 3 at 1-2.

Even if true, these contacts do not permit a finding that Mr. Salinas can be "found" in Colorado for purposes of the statute.  But more importantly, Applicant is in any event wrong on the "facts" that he submitted to the Court to obtain *ex parte* relief.  As set forth in the attached declarations, the "family property" cited in the Application does not belong to Mr. Salinas, Mr. Salinas' visits to Colorado are anything but "regular," and Mr. Salinas has no "pattern and practice" of visiting Vail, much less a pattern of visits sufficient to support a determination that he can be "found" in the jurisdiction.

Second, and even if Mr. Salinas could be "found" in this District (and clearly he cannot), this Court should exercise its discretion and deny the discovery being sought.  Neither Uphold nor the Applicant are alleged to have any particular ties to Colorado; the actions that form the basis for the proceedings are not alleged to have taken place in Colorado; the documents sought are not (and never were) located in Colorado; and there has been no effort to connect Colorado to the Cayman Islands Proceedings.  Nor does the Applicant explain what steps he took to obtain the requested discovery from other sources, including the parties themselves.

Third, the subpoenas should be quashed because Mr. Salinas has not been properly served.  As set forth in the attached declaration of Kenia Lainez, Mr. Laggner sought to serve Mr. Salinas by having a private party hand the subpoenas to an employee of a yacht used by Mr.

2

Salinas while it was docked in Malaga, Spain (a location, like Colorado, having nothing whatsoever to do with the Cayman Islands Proceedings). That attempted service, made without reference or regard to Spanish law, U.S. law, or international treaties, did not comport with any of the requirements for valid service of process.

Finally, the subpoenas should be quashed because they impose undue burdens. One subpoena seeks to force Mr. Salinas, who is not a U.S. citizen, to travel to the U.S. from another country for a deposition regarding a proceeding in which he is not a party in a district that has no interest in, or connection to, the litigation. The other subpoena covers eight broad categories of documents over a time period of more than 10 years, and seeks documents that go far beyond the issues in dispute in the Cayman Proceedings.[1]

For all of these reasons, and others set out below, the subpoenas seeking discovery pursuant to 28 U.S.C. § 1782 should be quashed.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    The Cayman Island Proceedings

Applicant William Laggner seeks discovery from Mr. Salinas for use in a "winding up" proceeding filed in the Financial Services Division of the Grand Court of the Cayman Islands by certain shareholders of Uphold Ltd. ("Uphold"), a Cayman Islands limited liability company. *See* Doc. 5 at 1-2. Mr. Salinas is not named as a party in those proceedings, and nothing in Mr. Laggner's applications to this Court or their accompanying declarations suggests that any of the parties to the Cayman Islands Proceedings—or any of the conduct alleged in the Application— bear any relationship to Colorado.

---

[1] Contemporaneously with filing this motion, and without prejudice to arguments concerning jurisdiction, Mr. Salinas has served Applicant's counsel with responses and objections to the Subpoenas.

**B.     Ricardo Salinas' Contacts with Colorado**

Mr. Salinas is a Mexican citizen and resident of Mexico City.  Salinas Decl. (Ex. 1) ¶ 3. He is not, and has never been, a citizen or permanent resident of the United States or any American state, including Colorado.  *Id*.  Mr. Salinas owns no property in Colorado, or, for that matter, anywhere in the U.S.  *Id.* at ¶ 4.  He has no documents relating to Uphold or the Cayman Islands Proceedings in Colorado, and he has not engaged in any Uphold-related business while in the state.  *Id*. at ¶¶ 6-7.

Mr. Salinas' travel to Colorado has been, at most, sporadic.  All of his trips have been for purposes of short vacations, primarily with family members.  Applicant claims—without any evidentiary support—that Mr. Salinas makes "regular[]" trips to Colorado, and has a "pattern and practice" of visiting Colorado "that continues to present day," Doc. 3 at 1-2.  But the evidence, including flight manifests for the flights cited in the Application, shows that Mr. Salinas made only a single, short trip to Colorado over the last five years.  *See* Ex. 1 ¶ 6; Lastra Decl. (Ex. 2) (attaching travel records redacted to omit personal information and information relating to individuals other than Mr. Salinas).

**C.     The Instant Application**

Mr. Laggner filed an initial *ex parte* application for discovery on August 9, 2023.  *See* Doc. 1.  This Court, in an order dated January 11, 2024, denied that application after concluding that there was insufficient evidence that Mr. Salinas "resides or may be found" in the District of Colorado for purposes of Section 1782.  *See* Doc. 2 at 3-4.  Mr. Laggner then filed a renewed application, *see* Doc. 3, and on February 2, 2024, the Court granted that application, specifically noting that the subpoenas were being issued "subject to any appropriate actions . . . including motions to quash under Rule 45 or protective orders under Rule 26(c)."  Doc. 5 at 6.

The subpoenas purportedly served on Mr. Salinas seek to compel him to sit for a deposition in Colorado and to produce eight broad categories of documents covering more than 10 years. *See* Doc. 3-16 at 2; Doc. 3-17 at 5-7. Many of these requests seek discovery that appears to go beyond the subject matter of the Cayman Islands Proceedings. For example, Request No. 1 seeks "all documents" relating to Uphold and the Applicant, whether or not linked to the issues raised in the proceedings.

Other than in the most general way, Mr. Laggner's application does not describe how the material requested would assist in deciding the dispute pending in the Cayman Islands, or what steps (if any) Mr. Laggner has taken to secure that evidence from parties who are before the Court in those proceedings. Nor does the Application explain why the material sought—documents belonging to the Company and communications between Mr. Salinas and parties to the proceeding—would not be duplicative of material that could (and presumably will) be obtained through party discovery in the Cayman Islands Proceedings. The Application does not (and cannot) allege that the documents being sought are, or ever were, located in Colorado.

### D. The Purported Service of Applicant's Subpoenas

On April 11, 2024, Applicant purported to serve Mr. Salinas with two subpoenas by handing them to a staff member of a yacht being used by Mr. Salinas, in Malaga, Spain. *See* Lainez Decl. (Ex. 3) ¶¶ 4-10. The subpoenas appear to have been served by a private citizen, *id*., and not, as required by applicable law, a government official, consular officer, postal service employee or notary public. *See* Garcia Decl. (Ex. 4) ¶ 6.

### ARGUMENT

Applications made under 28 U.S.C. § 1782 are evaluated in two steps: First, the Court must determine whether it has the authority, statutory and jurisdictional, to grant the requested

5

discovery.  Second, the Court must determine whether it should "exercise its discretion to do so."

*In re Application of Grupo Qumma, S.A.*, 2005 WL 937486, at * 1 (S.D.N.Y. Apr. 22, 2005).

**I.      Mr. Salinas Does Not Reside (and Cannot be Found) in Colorado as Required By Section 1782**

Section 1782, by its terms, permits discovery to be ordered only by a district court in a district in which the person from whom discovery is sought "resides" or "is found."  28 U.S.C. § 1782(a).  Here, Mr. Laggner does not argue that Mr. Salinas "resides" in Colorado, but rather that Mr. Salinas can be "found" in the State.[2]  *See* Doc. 3 at 9-11.  Mr. Laggner is wrong, and there is no reading of the statute, or of the applicable caselaw, that permits a finding that Mr. Salinas can be "found" in Colorado.

Neither the Tenth Circuit (nor any district court in the 10th Circuit) has specifically articulated the test to be applied in determining whether a person from whom discovery is sought can be "found in" the district.  *See In re Ex Parte Application Under 28 U.S.C. § 1782 to Take Discovery from Americo Fialdini Junior ("Americo Fialdini Junior"),* 2021 WL 253455, at *3 (D. Colo. Jan. 26, 2021) (Wang, J.) (noting absence of Tenth Circuit or District of Colorado authority on definition of "found in" for purposes of Section 1782).[3]  But under any standard

---

[2] Mr. Salinas plainly does not "reside" in Colorado.  *See*, *e.g.*, Resides, Oxford English Dictionary (online ed.) (defining "resides" in the relevant sense as "[t]o dwell permanently or for a considerable time, to have one's settled or usual home in or at a particular place.  Also in extended use."); Resides, American Heritage Dictionary (online ed.) (defining "resides" in the relevant sense as "[t]o live in a place permanently or for an extended period.").  Elsewhere in the U.S. Code, "resides" is defined to mean "with respect to an individual, the location of the individual's home or other place where the individual habitually lives."  *See* 34 U.S.C.A. § 20911(13); *see also U.S.* v. *Alexander*, 817 F.3d 1205, 1213-1214 (10th Cir. 2016) (discussing federal guidelines which define "habitually lives" to mean "at least 30 days").

[3] Although Section 1782 does not, on its face, limit its discovery power to documents located in the United States, at least one court in this district has held that it is "outside the *jurisdictional* reach of the statute" to compel a respondent to produce documents located outside the United

adopted by courts outside the Tenth Circuit, discovery cannot be ordered under Section 1782 unless the person or entity from who discovery is sought is, *at a minimum*, subject to personal jurisdiction in the district. *Australia & New Zealand Banking Grp. Ltd.* v. *APR Energy Holding Ltd.*, 2017 WL 3841874, at *3 (S.D.N.Y. Sept. 1, 2017) ("the Court must have personal jurisdiction over [respondent] in order to enforce [applicant's Section 1782] subpoena."); *In re Servotronics, Inc.*, 2021 WL 1521931, at *3 (D.S.C. Apr. 16, 2021) ("the court must consider whether it could exercise personal jurisdiction over [respondent] consistent with his rights under the Due Process clause to determine its authority over him under § 1782."); *see also Municipality of Mariana*, 2024 WL 246235, at *2 (D.N.M. Jan. 23, 2024) ("[A] district court must be assured that it has jurisdiction over a petition, and once jurisdiction is established, only then may grant discovery under § 1782 in its discretion.").[4]

---

States, regarding conduct that took place outside the United States, in aid of a proceedings outside the United States. *In re Grupo Unidos Por El Canal, S.A.*, 2015 WL 1810135, at *9-10 (D. Col. April 17, 2015) (emphasis added). *See infra* at pp. 14-15 (noting that regardless of jurisdiction the physical location of the documents is relevant to the question of whether a court should exercise its discretion in grating discovery under Section 1782).

[4] We are not aware of any cases, from this District or otherwise, in which a court has allowed discovery under Section 1782 without either (a) expressly finding that it had personal jurisdiction over the person or entity from whom discovery was sought; or (b) acting under circumstances in which there could be no serious doubt that such jurisdiction existed. *See Salt Mobile S.A.* v. *Liberty Glob. Inc.*, 2021 WL 2375864, at *2 (D. Colo. June 10, 2021) (individual respondent "resides in Denver" and corporation had "its headquarters in Denver"); *Fialdini*, 2021 WL 411105, at *4 (respondent worked as a realtor in Aspen); *In the Matter of Kozuch* v. *Kozuch*, 2018 WL 4376405, at *1 (D. Colo. June 7, 2018) (respondent had a subpoena processing office in Colorado); *Campos-Alvarez* v. *Newmont Mining Corp.*, 2016 WL 9725290, at *2 (D. Colo. Sept. 27, 2016) (corporation headquartered in Colorado); *Chevron Corp.* v. *Snaider*, 78 F. Supp. 3d 1327, 1335 (D. Col. 2015) (respondents conceded they were found in Colorado); *In re Request for Int'l Jud. Assistance from the Norrkoping Dist. Ct., Sweden*, 219 F. Supp. 3d 1061, 1062 (D. Colo. 2015) (respondent resided in Denver); *Westjest Airlines, Ltd.* v. *Lipsman*, 2015 WL 7253043, at *2 (D. Colo. Nov. 17, 2015) (respondent "both resides in Colorado and does business here as the Chief Executive Officer" of a company based in Boulder); *Interbrew Cent. Eur. Holding BV* v. *Molson Coors Brewing Co.*, 2013 WL 5567504, at *1 (D. Colo. Oct. 9, 2013) (respondent corporations had their executive offices in Denver); Dkt. 7 at 2, *Republic of*

7

As this Court has noted, "federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Americo Fialdini Junior*, 2021 WL 253455 at *3 (*quoting Daimler AG* v. *Bauman*, 571 U.S. 117, 125 (2014)). Colorado courts "conduct a two-step analysis" to determine whether they have personal jurisdiction over a defendant. First, courts examine "whether the non-resident defendant has 'minimum contacts' with the forum state such that he should reasonably anticipate being haled into court there." *Melea, Ltd.* v. *Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007). Then, if the minimum contacts test is satisfied, courts "ask whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,' that is, whether the exercise of jurisdiction is 'reasonable' under the circumstances." *Id*. at 1066. The exercise of personal jurisdiction over Mr. Salinas in Colorado for purposes of gathering discovery in aid of a Cayman Islands Proceeding plainly fails both parts of the test.

The Application refers to three types of "evidence" to establish Mr. Salinas' ties to Colorado. Whether considered individually or as a whole, none established the requisite minimum contacts. First, the Application cites to "flight tracking data" that "shows that Mr.

---

*Ecuador* v. *Stratus Consulting, Inc.*, 2013 WL 2352425 (D. Colo. May 29, 2013) (respondent corporation headquartered in Boulder); *In re Kegel*, 2013 WL 4462110, at *1 (D. Colo. Aug. 20, 2013) (respondent "concede[d]" each statutory requirement); Dkt. 3 at 17, *In re Broadsheet LLC*, 2011 WL 4949864, at *1-2 (D. Colo. Oct. 18, 2011) (respondents domiciled in Colorado); *Republic of Ecuador v. Bjorkman*, 801 F. Supp. 2d 1121, 1124 (D. Colo. 2011), *aff'd*, 2011 WL 5439681 (D. Colo. Nov. 9, 2011) (respondent was resident of Fort Collins); *Memorandum of Law in Support of Ex Parte Application, Perez Pallares*, 2010 WL 9525831, at *2 n.3 ("[T]here is no dispute that the respondents are 'found' in the District" because respondents were a Boulder-based consulting firm and its employees); *In re Application of Michael Wilson & Partners, Ltd.*, 2007 WL 2221438, at *2 (D. Colo. July 27, 2007) (respondent individual "is a resident of Colorado" and respondent corporations "have their principal places of business in Colorado"); *Americo Fialdini Junior*, 2021 WL 253455, at *3 (respondent "owns and rents property in the District of Colorado" and that the discovery request "pertains to the potential payment of rental fees for such property").

Salinas regularly travels to Colorado." *See* Doc. 3 at 10. But that tracking data reflects the movements of an aircraft used by Mr. Salinas, not of Mr. Salinas himself, and passenger manifests show that Mr. Salinas was only aboard the airplane for one of the five trips cited in the Application. Ex.1 ¶ 6; Ex. 2 ¶¶ 3-4, Exs. A-L. Next, the Application cites to "social media posts" that purport to corroborate Mr. Salinas' "repeated travel" to Colorado. *See* Doc. 3 at 10; Doc. 3-7; Doc. 3-8. But these two posts—the only ones offered—were made on February 23 and 28, 2022, and clearly came from the same trip and provide no evidence of Mr. Salinas' "repeated travel" to Colorado. *Id.* Finally, the Application refers to a "residence" that "Mr. Salinas' family" maintains in Colorado, and in particular to a time share at the Four Seasons Hotel in Vail. Doc. 3 at 1-2, 10. But the time share does not belong to Mr. Salinas, and the contacts that others, including family members, might have with Colorado have no bearing on whether Mr. Salinas himself can be "found in" the District. *Calder* v. *Jones*, 465 U.S. 783, 790 (1984) (each individual's "contacts with the forum State must be assessed individually").[5]

Mr. Salinas' actual interactions with Colorado are accordingly insufficient to establish minimum contacts "such that he should reasonably anticipate being haled into court" here. *Melea*, 511 F.3d at 1065. This is all the more true because those contacts bear no relationship to the discovery sought. "To determine whether a respondent is 'found in' a particular district, the Court should 'look at the respondent's contacts with the forum' and whether 'the discovery material sought proximately resulted from the respondent's forum contacts.'" *Terra Inv., LLC*, 2023 WL 21014, at *5 (S.D. Fla. Jan. 3, 2023). In other words, "the respondent's having

---

[5] The only other reference to Mr. Salinas' contacts with Colorado are a 25-year-old press story that states, without citation, that Mr. Salinas "skis in Vail," and a hearsay reference to a conversation in which Mr. Laggner was told by a respondent in the Cayman Island Proceedings that Mr. Salinas skis in Vail "all the time."

purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all." *Valle Ruiz*, 939 F.3d at 530.

In this case, the discovery sought by Mr. Laggner has nothing to do with Mr. Salinas' minimal contacts with this District. *See Fialdini*, 2021 WL 411105, at *4 (D. Colo. Feb. 5, 2021) (Wang, J.) (denying discovery where applicant failed to "establish[] that this action arises out of any contact these [a]irlines have with the District"); *cf. Servotronics*, 2021 WL 1521931, at *4 (granting Section 1782 application because "[t]he discovery material sought here . . . resulted from [respondent's] contacts with South Carolina"). Contacts between Mr. Salinas and Colorado relate only to vacations, and Mr. Laggner has not shown that the documents he seeks arise out of, or are in way connected to, those trips. *See generally id*.[6]

## II.    The Cases Cited In Mr. Laggner's Application Do Not Establish That Mr. Salinas Can Be "Found In" Colorado

Mr. Laggner's application cites two cases for the proposition Mr. Salinas can be found in this District for purposes of Section 1782. Neither supports that conclusion.

First, Mr. Laggner cites *Americo Fialdini Junior*, 2021 WL 253455, at *3, for the proposition that Section 1782's "found in" requirement is satisfied "where an individual is 'routinely present in [] Colorado.'" Doc. 3 at 10. But *Americo Fialdini Junior* does not state that routine presence, without more, is sufficient to establish jurisdiction, and certainly does not define what "routine presence" means in this context. In *Americo Fialdini Junior*, petitioners sought discovery in support of a Brazilian proceeding involving embezzled funds that were

---

[6] This alone is grounds to grant the motion to quash, because an application under Section 1782 must "'provide additional specificity concerning the discovery it seeks' to allow a court to evaluate whether the discovery requested is connected to the forum." *In re Deposito Centralizado de Compensacion y Liquidacion de Valores Decevale, S.A.*, 2021 WL 2323226, at *5 (S.D. Fla. June 1, 2021) (quoting *Valle Ruiz*, 939 F.3d at 530 n.12).

allegedly used by the Fialdinis to rent real property in Aspen, Colorado. The Court began its jurisdictional analysis by noting that the Colorado long-arm statute provides for personal jurisdiction over any person, "whether a resident of Colorado or not," in a cause of action "arising from '[t]he ownership, use, or possession of any real property situated in this state.'" *Id.* at \*3 (quoting Colo. Rev. Stat. § 13-1-124(1)(c)). It then held that the individual *Americo Fialdini Junior* respondents could be "found in" the District of Colorado because they "are routinely present in Aspen Colorado, *and that the discovery directed at them pertains, in part, to the potential misuse of the Foundation's funds in renting real property in Colorado.*" *Id.* (emphasis added). Here, Mr. Laggner has not even alleged any nexus between the Cayman Islands Proceedings, the discovery sought, and Colorado. *See* pp. 9-10, *supra*.

Next, Applicant cites *In re Matter of Application of Oxus Gold PLC*, 2006 WL 2927615, at \*5 (D.N.J. Oct. 11, 2006) (Hughes, Mag. J.), for the proposition that a respondent is "properly 'found' in [a] district under Section 1782 where he vacationed in the district on a 'consistent basis every year.'" Doc. 3 at 10. Setting aside the dispositive fact that respondent in *Oxus Gold* admitted he could be found in New Jersey, 2006 WL 2927615 at \*5—and setting aside the fact that Mr. Salinas does not vacation in Colorado "on a consistent basis every year"—the contacts between the respondent and the forum in *Oxus Gold* went well beyond mere vacations. Specifically, the respondent in *Oxus Gold* "lease[d] a residential apartment in New Jersey, [was] registered to vote in New Jersey, maintain[ed] regular doctor appointments with his physician here, and travel[ed] to New Jersey at least two months every year to vacation and visit his family." *Id.* The case provides no support for the instant Application.

11

**III.    Even If the Court Were to Find That Mr. Salinas Could Be "Found in" Colorado, Other Considerations Weigh Strongly Against Ordering the Discovery Sought in this Case**

In *Intel*, the Supreme Court held that "a district court is not required to grant a [Section] 1782(a) discovery application simply because it has the authority to do so." *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004); *see also Eli Lilly*, 37 F.4th at 168. As a result, and even if Mr. Laggner could satisfy the statutory requirements of Section 1782 "[t]he court retains discretion to determine whether such discovery is proper." *In re Application of Thomas Read Mattson*, 2021 WL 1698929, at *2 (D. Colo. Apr. 29, 2021) ("Meeting the statutory requirements is necessary but not sufficient for the granting of such an application.").

*Intel* identified four factors that district courts may consider in deciding whether to exercise their discretion in ordering discovery under Section 1782: "(1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the discovery request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome." *Salt Mobile S.A.* v. *Liberty Glob. Inc.*, 2021 WL 2375864, at *1 (D. Colo. June 10, 2021) (citing *Intel*, 542 U.S. at 264-65). These factors are only advisory, and *Intel* "does not mandate that every factor support a court's exercise of its discretion or that all factors even need be considered." *Eli Lilly*, 37 F.4th at 168.

12

**A.**    **Mr. Laggner's Application Does Not Establish That The Discovery Sought Is Outside The Cayman Islands' Jurisdictional Reach**

Mr. Laggner asserts that the discovery he seeks "is outside the reach of the Cayman Islands' jurisdiction" because Mr. Salinas is not a party to the Cayman Islands Proceedings. Doc. 3 at 12. But the relevant inquiry is not whether Mr. Salinas is or is not a party to the Cayman Islands Proceedings. The relevant question is whether *the evidence sought* is available in the foreign proceeding. *See Intel*, 542 U.S. at 264 (noting that "in some circumstances, evidence may be available to a foreign tribunal even if it is held by a non-participant to the tribunal's proceedings."); *see also In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, 2015 WL 3439103, at \*6 (D. Nev. May 28, 2015) ("[T]he key issue is whether the material is obtainable through the foreign proceeding.").

Here, Mr. Laggner has not explained why the information he seeks cannot be obtained in the Cayman Island Proceedings. *See In re Ex Parte LG Elecs. Deutschland GmbH*, 2012 WL 1836283, at \*2 (S.D. Cal. May 21, 2012). While a party seeking discovery is not required to first seek discovery from a party in the foreign litigation, *cf. Chevron Corp.* v. *Snaider*, 78 F. Supp. 3d 1327, 1335 (D. Colo. 2015), a court "is permitted, in deciding how to exercise its discretion, to consider whether the applicant has availed itself of discovery procedures in the foreign forum," *see Deutschland GmbH*, 2012 WL 1836283, at \*2; *see also In re Pinchuk*, 2014 WL 1328484, at \*5 (S.D. Fla. Mar. 31, 2014). Beyond bald assertions, the Application makes no effort to describe what discovery *is* available to him in the Cayman Islands Proceedings, either directly or through other procedures, like mutual legal assistance treaties, available in Cayman Islands courts.

13

In fact, it appears much (if not all) of the requested evidence is likely available from parties to the Cayman Island Proceedings. Request No. 2, for example, seeks "all documents" relating to Laggner and Uphold or Uphold's Board of Directors. Doc. 3-17 at 6. But Uphold itself is a party to the Cayman Islands Proceedings, and Mr. Laggner does not explain or account for documents he has received or could receive from Uphold either in discovery in the Cayman Islands Proceedings or through his status as a minority shareholder. In the same way, Request No. 8 seeks communications between Mr. Salinas and Adrian Steckel. *See id*. at 7. But again Mr. Steckel is a named party in the Cayman Islands Proceedings, and Mr. Laggner's application does not describe efforts made to obtain documents—including communications between Mr. Steckel and Mr. Salinas—from Mr. Steckel. *See Deutschland GmbH*, 2012 WL 1836283, at *2. The same is true with respect to virtually every request. *See In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1040 (N.D. Cal. 2016) (factor is at most neutral when it is "unclear" whether a foreign tribunal can obtain the evidence sought).

**B.     The Undisputed Fact That All of the Requested Evidence is Located Outside of the District (And Outside of the United States) Weighs Heavily Against the Application**

Even if there is no *per se* bar to compelling documents that are physically outside of the district, *see supra* note 3, "the location of the information militates against granting the petition" where "most, if not all, of the relevant documents lie outside this jurisdiction and indeed outside this country." *In re Application of Thai-Lao Lignite (Thailand) Co., Ltd.*, 821 F. Supp. 2d 289, 297 (D.D.C. 2011); *see also Pinchuk* v. *Chemstar Prod. LLC*, 2014 WL 2990416, at *4 (D. Del. June 26, 2014) (considering aims of § 1782 and finding that request for foreign documents should not be enforced."); *cf. In re Chevron Corporation*, 2010 WL 8786279, at *5 (D.N.M. Sept. 2, 2010) (granting application in part because "because all of the documents relevant to the

14

proposed discovery are within the District of New Mexico"); *Grupo Unidos*, 2015 WL 1810135, at \*11 ("[E]ven if the court had not found that the location of the documents in Panama were a statutory bar, the court would still consider the documents' foreign location to weigh against production."). In this case, Mr. Laggner has not alleged that any of the documents he seeks from Mr. Salinas are located in Colorado, and in fact they are not. Ex. 1 at ¶ 7.

### C.  Mr. Laggner's Application Circumvents Proof-Gathering Restrictions In Mexico

Mr. Laggner argues, *see* Doc. 3 at 14, that his discovery request "is not an attempt to circumvent the procedures of the Cayman Islands court." But the relevant inquiry is not so narrow:  the relevant *Intel* factor asks whether a request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of *a* foreign country." *In re Perez Pallares*, 2010 WL 4193072, at \*1 (D. Colo. Oct. 20, 2010) (quoting *Intel*, 542 U.S. at 265) (emphasis added). Here the Application is an end-run around policies and procedures governing discovery in aid of foreign proceedings in Mexico, the country of Mr. Salinas' domicile. *See* Ex. 1 at ¶ 7.

As a civil-law jurisdiction, "discovery techniques which are utilized out of the courtroom (such as depositions), have no place in Mexican litigation." Robert M. Kossick, Jr., *Litigation in the United States and Mexico: A Comparative Overview*, 31 U. MIAMI INTER-AM. L. REV. 23, 66 (2000); *see also* Ryan G. Anderson, *Transnational Litigation Involving Mexican Parties*, 25 ST. MARY'S L.J. 1059, 1060 (1994) ("[T]he concept of pretrial discovery . . . is completely alien to a civil-law system."). That said, "it is possible to collect evidence for trials to be conducted outside of Mexico" as a result of "the international treaties Mexico has signed," including the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Evidence Convention"). *Kossick*, *supra*, at 74-75; *see also Torreblanca de Aguilar* v.

15

*Boeing Co.*, 806 F. Supp. 139, 144 (E.D. Tex. 1992) ("[T]he testimony of unwilling nonparty witnesses in Mexico can *only* be obtained to aid in a United States litigation through letters rogatory pursuant to the Hague Evidence Convention.") (emphasis added).[7]

Again, Mr. Laggner has made no effort to show that he has sought the assistance of the Cayman Islands courts to gather the requested evidence in a manner consistent with Mexican law. To do so, Mr. Laggner would be required to petition the Cayman Islands court under the Hague Evidence Convention and request that a Letter of Request be sent to Mexico's designated authority. By failing to proceed in that manner, Mr. Laggner has circumvented Mexico's clear policy and procedure regarding the gathering of evidence for foreign litigation. Again, and "[a]lthough § 1782 does not have an 'exhaustion' requirement, the Court is permitted, in deciding how to exercise its discretion, to consider whether the applicant has availed itself of discovery procedures in the foreign forum." *Deutschland GmbH*, 2012 WL 1836283, at \*2; *see also In re Degitechnic*, 2007 WL 1367697, at \*4.

### D.      The Discovery Sought Is Unduly Intrusive And Burdensome

The fourth *Intel* factor militates against discovery when the discovery request is unduly intrusive and burdensome. *Salt Mobile*, 2021 WL 2375864, at \*1; *see also Chevron Corp.* v. *Snaider*, 78 F. Supp. 3d 1327, 1335 (D. Colo. 2015).

In this case, the breadth of the Laggner Subpoena's requests, including eight broad categories seeking "all documents and communications" regarding multiple entities and transactions, suggest a fishing expedition that the law does not allow. *See Americo Fialdini Junior*, 2021 WL 253455, at \*3 (noting that breadth of requests "give[] this court pause").

---

[7] As a territory of the United Kingdom, the Cayman Islands is considered a signatory to the Hague Conventions. *See, e.g., Arnold* v. *Royal Bank of Canada Tr. Co. (Cayman) Ltd.*, 2014 WL 1871728, at \*1 (S.D. Cal. May 8, 2014).

Further, and as noted above, many documents sought through the requests appear to go significantly beyond the scope of the underlying Cayman Islands Proceeding. *See, e.g.*, Doc. 3-17 at 6-7 (requesting communications with Adrian Steckel relating to Uphold or the Bank of London, regardless of relevance to the Cayman Islands Proceeding).

## IV.    The Subpoenas Were Not Properly Served

The Laggner subpoenas should be quashed for the additional reason that they were not served in conformity with Rule 45, applicable statutes, or either foreign or international law.

### A.    Service of the Subpoenas Was Not Proper Under Rule 45(b) and Section 1783

A party seeking to serve a subpoena on a person "in a foreign country" must satisfy 28 U.S.C. § 1783. *See* Fed. R. Civ. P. 45(b)(3). As the party "asserting the validity of service," Mr. Laggner "bears the burden of proof on that issue." *Staudinger* v. *Hoelscher, Inc.*, 166 F. Supp. 2d 1335, 1339 (D. Kan. 2001); *see also Raeth* v. *Bank One*, 2008 WL 410596, at \*1 (D. Colo. Feb. 13, 2008); 4A Charles Alan Wright, et al., Fed. Prac. & Proc. Civ. § 1083 (4th ed.).

Both Rule 45(b)(3) and Section 1783(a) limit federal courts' ability to authorize the service of a subpoena on persons located in a foreign country to persons who are "national[s] or resident[s]" of the United States. As a result, foreign nationals living abroad (like Mr. Salinas) "are not subject to service of subpoenas outside the United States." *OL Private Counsel, LLC* v. *Olson*, 2022 WL 2304279, at \*3 (D. Utah June 27, 2022) (citing Rule 45); *Aristocrat Leisure Ltd.* v. *Deutsche Bank Trust Co. Ams.*, 262 F.R.D. 293, 305 (S.D.N.Y. 2009) (same); *United States* v. *Aguilar*, 2014 WL 6680525, at \*3 (W.D. Tex. Nov. 25, 2014) ("Courts cannot issue subpoenas to non-citizens residing outside the United States") (citing Section 1783).

Section 1783 also limits federal courts' ability to authorize service of subpoenas to those "requiring the appearance as a witness *before it, or before a person or body designated by it*." 28

U.S.C. § 1783(a) (emphasis added).  That language "offers no indication that Congress intended for the provision to apply in connection with foreign proceedings," and "[o]n the contrary, its wording suggests that it was unambiguously intended to apply to domestic proceedings only." *In re Oxus Gold PLC*, 2007 WL 1037387, at *9.

Mr. Laggner's attempted service on Mr. Salinas in Spain also does not comport with Section 1783(b), which states that service of subpoenas "shall be effected in accordance with the provisions of the Federal Rules of Civil Procedure relating to service of process on a person in a foreign country."  That provision of the Federal Rules of Civil Procedure is Rule 4(f), which states that "[u]nless federal law provides otherwise," persons located in a foreign country may be served in three ways.  *See* Fed. R. Civ. P. 4(f)(1)-(3).  Mr. Laggner has not complied with any of the three.  The first option is to proceed by "any internationally agreed means of service," such as those authorized by Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Service Convention").  Fed. R. Civ. P. 4(f)(1).[8]  The service attempted on Mr. Salinas does not abide by the requirements of the Hague Service Convention, as Spain does not permit informal or direct service, and Mr. Laggner has offered no evidence that he used Spain's authorized Central Authority to serve the subpoenas.  *See* Spain - Central Authority & Practical Information, HCCH, https://tinyurl.com/bd3drdy9 (last visited May 6, 2024); Serving documents – Spain, European Justice,  https://tinyurl.com/3fzy34ra (last visited May 6, 2024); *Ospina* v. *Ospina*, 2022 WL 16951671, at *1 (W.D.N.C. Nov. 15, 2022).

---

[8] The United States and Spain are signatories to the Hague Service Convention. *See Ospina*, 2022 WL 16951671, at *1.  Mexico is too, *see Briggs* v. *Castillo*, 2022 WL 473533, at *2 (W.D. La. Jan. 20, 2022), though no service was attempted while Mr. Salinas was located in Mexico.

Neither has Applicant effected service via the second option, Rule 4(f)(2)(A), as he has not employed alternate means of service permitted by the Hague Service Convention or Spanish law.[9]  Mr. Laggner cannot show that having a purely private actor hand a subpoena to a third person aboard a yacht constitutes lawful service under Spanish law.  *See, e.g.*, *Dahya* v. *Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*, 17 Nev. 208, 215 (2001) ("Under Spanish law, personal service must be specifically performed by an authorized marshall or judicial officer.").  Finally, Applicant has not sought or obtained any court order that might satisfy the third option, Rule 4(f)(3), or any other evidence establishing that the subpoenas were properly delivered to him.[10]

### B.     Service of the Subpoenas Was Not Proper Under Rule 45(c)

The deposition subpoena also violates Rule 45(c)(1), which specifies that a subpoena may command a person to attend a deposition only when that deposition is "(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person," or "(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense."  As explained above, pp. 6-10, *supra*, Mr. Salinas does not "reside" in this District.  Mr. Salinas resides in Mexico City nearly 1,500 miles away from Basalt, Colorado.  *See* p. 4, *supra*.  The plain text of Rule 45(c) prohibits a subpoena from commanding attendance at a deposition so far from where a deponent "resides."

---

[9] Applicant has also not satisfied Rule 4(f)(2)(B), as he did not send a letter rogatory, or Rule 4(f)(2)(C), as—even if such service was permissible—he did not delivery any documents to Mr. Salinas personally or send documents via mail and obtain a receipt signed by Mr. Salinas.

[10] Applicant has also failed to comply with Rule 4(*l*)(2) because he has not provided any proof of service as required by the Hague Service Convention and he has not provided a receipt signed by Mr. Salinas or any other evidence establishing that the subpoenas were properly delivered to him.  *Cf. In re Anglin*, 2009 WL 4739481, at *2 (D. Neb. Dec. 4, 2009) (ordering Section 1782 applicant to comply with Rule 4(*l*)).

**C.        Service of the Subpoenas Was Not Proper Under Rule 45(d)**

Like the fourth *Intel* factor, Rule 45(d) aims to protect persons subjected to a subpoena from undue burden.  For the reasons already explained, the document subpoena constitutes an undue burden because of its overbreadth and because all of the documents sought are located in a foreign country, *see* pp. 14-17, *supra*, and the deposition subpoena constitutes an undue burden because it purports to command Mr. Salinas to travel well over 1,000 miles further than the Rules permit, *see* p. 20, *supra*.

**CONCLUSION**

For the foregoing reasons, Mr. Salinas respectfully requests that the Court quash the subpoenas previously authorized *ex parte* in this matter under 28 U.S.C. § 1782.  Mr. Salinas respectfully requests oral argument on this motion.

DATED:  May 8, 2024

Respectfully submitted,

*s/ Jeffrey S. Pagliuca*

Jeffrey S. Pagliuca, No. 12462
Laura Menninger, No. 34444
Haddon, Morgan and Foreman, P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Phone: 303-831-7364
Fax: 303.832.2628
jpagliuca@hmflaw.com
lmenninger@hmflaw.com

Jay Cohen
Roberto Finzi
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone:  212-373-3163
Facsimile:  212-492-0163
jaycohen@paulweiss.com
rfinzi@paulweiss.com

*Attorneys for Ricardo Salinas*

21

## STATEMENT OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1, counsel for Mr. Salinas conferred by phone and e-mail with counsel for Applicant on April 23-24, 2024, regarding the requested relief.  Applicant opposes the relief.

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2024, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

*s/ Holly Rogers*

22